UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| ALEXANDRA LAWRENCE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE WILDERNESS SOCIETY, INC. ) <br> ) <br> Defendant. ) <br> ) | **COMPLAINT** <br><br> Civil Action No.: 5:23-cv-124 <br> Jury Trial Demanded |

NOW COMES Plaintiff, ALEXANDRA LAWRENCE, by and through undersigned counsel, and complains against Defendant THE WILDERNESS SOCIETY, INC., as follows:

## INTRODUCTION AND NATURE OF THE CASE

Plaintiff brings this action against Defendant The Wilderness Society, Inc. ("Defendant") to redress Defendant's violations of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). Specifically, Defendant violated the EPA by paying Plaintiff less than male employees for performing work that required equal skill, effort, and responsibility under similar working conditions. As a result of Defendant's violations of the EPA, as described hereinbelow, Plaintiff is entitled to monetary damages and attorneys' fees pursuant to 29 U.S.C. § 216(b), and Defendant did not have a good faith basis for its violations of the EPA and, as a result, Plaintiff is entitled to liquidated damages and such other legal and equitable relief as the Court deems just and proper.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Alexandra Lawrence ("Ms. Lawrence"), is a citizen and resident of Howard County, Maryland. At all times relevant to this Complaint, Ms. Lawrence was a citizen and resident of Durham County, North Carolina.

2. At all relevant times, Ms. Lawrence was an employee of Defendant within the meaning of 29 U.S.C. § 203(e)(1). At all times relevant hereto, Ms. Lawrence was an employee of Defendant, engaged in commerce within the meaning of 29 U.S.C. § 203(b), as she was responsible for tasks including, but not limited to, managing and coordinating outreach and fundraising efforts, overseeing educational programs conducted by Defendant or in partnership with external organizations, assisting Defendant's legal team with litigation related to environmental matters, and managing the staff in her assigned region.

3. Defendant is a foreign not-for-profit corporation organized and existing under the laws of the District of Columbia and registered to do business in North Carolina. Defendant maintains a registered office in North Carolina at 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608. At all times relevant hereto, Defendant was an employer within the meaning of 29 U.S.C. § 203(d).

4. Defendant is a national organization that spearheads land conservation initiatives for the permanent protection of nearly 112 million acres of wilderness in 44 states within the United States. At all relevant times, Defendant was an enterprise within the meaning of 29 U.S.C. § 203(r) and an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(c).

5. Plaintiff has standing to bring this action pursuant to 29 U.S.C. § 216(b).

6. Plaintiff affirmatively pleads the limitations protections of the Lily Ledbetter Fair Pay Act of 2009, 42 U.S.C. § 2000e-5(e)(3)(A).

7. This Court has original subject matter jurisdiction over this action pursuant to 29 U.S.C. § 206(d) of the FLSA and 28 U.S.C. § 1331, as the claim for relief asserted herein arises under a federal statute.

8. This Court has personal jurisdiction over Defendant because it is registered to do business within the State of North Carolina and maintains a registered office within this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

10. Prior to being hired by Defendant, Ms. Lawrence earned her Doctor of Philosophy in Environmental Science from Duke University. Following graduation, Ms. Lawrence worked as the Lead Editor of Energy Policy for the Duke Energy Initiative and the Duke Initiative for Science and Society from April 2017 to January 2018, and as the Science Policy Program Director within the Duke Initiative for Science and Society from January 2018 to September 2018.

11. Defendant is a national nonprofit corporation whose mission is to "permanently protect nearly 112 million acres of wilderness in 44 states." Defendant's main office is located in Washington, D.C., and it maintains regional offices in eleven (11) states across the United States, including Asheville, North Carolina.

12. Ms. Lawrence was hired by the Defendant as the Southeast Regional Program Director in September 2018. As the Southeast Regional Program Director, Ms. Lawrence was paid $7,076.92/month, approximately $92,000 annually. In 2020, Ms. Lawrence received a cost-of-living salary adjustment and began earning approximately $96,000 annually. She worked in this position until her resignation in March 2021.

13. As the Southeast Regional Program Director, Ms. Lawrence was responsible for tasks including, but not limited to, managing and coordinating outreach and fundraising efforts, overseeing educational programs conducted by Defendant or in partnership with external organizations, assisting Defendant's legal team with litigation related to environmental matters,

and managing the staff in her assigned region. Ms. Lawrence primarily performed the duties of her position from her home in Durham, North Carolina.

14. When she was hired, Ms. Lawrence was the only regional director with the title "Regional Program Director." All other regional directors for Defendant held the title of "Senior Regional Director." These other senior regional directors were all males, whereas Ms. Lawrence is an African American female.

15. Melissa Watson ("Watson"), Defendant's Executive Vice President, informed Ms. Lawrence that her position title was different from the male senior regional directors because of alleged legacy organizational issues. However, she was also informed that no functional difference existed between her position as "Regional Program Director" and the position of "Senior Regional Director" held by her male coworkers, and Defendant agreed to change her title to Senior Regional Director "soon." Watson also told Ms. Lawrence that her job duties and pay were the same as that of the male Senior Regional Directors, specifically Senior Regional Director Southwest, Scott Miller, ("Miller") and Senior Regional Director Pacific, Dan Smuts ("Smuts").

16. Between September 2018 and December 2020, Ms. Lawrence inquired several times as to why her title still had not been changed to reflect that she held the same position as her male counterparts. Each time she asked, she was told the issue would be addressed "soon."

17. In February 2021, Defendant hired Mo Dailey ("Dailey") as the Vice President for Conservation Program. After she was hired, Dailey conducted an equity audit of the employees she supervised, including Ms. Lawrence. In late February 2021, Dailey contacted Ms. Lawrence and informed her that during the equity audit, she discovered that Ms. Lawrence was being paid approximately 30% less than the male Senior Regional Directors, specifically Miller and Smuts.

18. In addition to her duties as a Regional Program Director, Ms. Lawrence performed additional leadership duties, including but not limited to, leading multiple strategic teams and performing work on justice and equity initiatives within Defendant's organization.

19. After Dailey completed her equity audit, Watson told Ms. Lawrence she would be promoted to Senior Regional Director and would also receive a pay increase. However, this purported promotion did not involve any new roles or responsibilities, and Watson clarified that the change was merely to correct an inequity.

20. In March 2021, Ms. Lawrence's salary was increased to approximately $4,813.96 biweekly, equivalent to an annual salary of approximately $125,162.96. This increased salary was still less than the salary earned by her male colleagues for performing the same or substantially similar work and also did not include compensation for the additional leadership duties for which Ms. Lawrence had become responsible.

21. Although Defendant, through its executive staff, admitted to Ms. Lawrence that she had been receiving a salary 30% lower than that of her male colleagues for the same or substantially similar work for over two (2) years, Defendant refused to pay Ms. Lawrence the back wages she was owed. Defendant merely adjusted her salary moving forward; however, the adjusted salary was still lower than the salary earned by her male colleagues for the same work. At all times relevant hereto, Defendant paid, and Ms. Lawrence received, unequal pay for work that she performed that was equal to or substantially similar to the work performed by male employees (including but not limited to Miller and Smuts) and under the same or similar working conditions.

# CLAIM FOR RELIEF
## VIOLATION OF THE EQUAL PAY ACT
### [29 U.S.C § 206(d)]

22. Plaintiff reiterates and realleges each and every paragraph above as if set forth fully herein.

23. As discussed above, Defendant paid its male Senior Regional Directors a higher salary than Ms. Lawrence who performed the same or substantially similar job duties from September 15, 2018 through her resignation on March 15, 2021.

24. Between October 1, 2017 and September 30, 2018, Defendant paid Senior Regional Director Daniel Smuts at least $135,977, and paid Senior Regional Director Scott Miller at least $130,437. Ms. Lawrence was hired in September 2018 to perform a substantially similar role to the roles held by Smuts and Miller but paid her approximately $92,000 for that time period.

25. Between September 2018 and September 2020, Smuts' salary increased to at least $154,493 annually, while Ms. Lawrence's salary only increased to an annual salary of approximately $96,000.

26. Even once Defendant performed its so-called inequity correction as discussed above in early March 2021, Ms. Lawrence was still paid $5,000-$10,000 less per year than her male colleagues performing substantially similar work were earning when she was hired over two (2) years earlier. Defendants never increased Ms. Lawrence's pay to a level commensurate with what her male colleagues were paid before her employment with Defendant ended on March 15, 2021.

27. After Ms. Lawrence learned of the pay disparity, she requested that Defendants pay her back wages to compensate her for the difference between the wages she was paid and the wages she should have been paid commensurate with the salary her male colleagues performing

6

substantially similar work were paid. Defendants explicitly refused to compensate Ms. Lawrence for her lost wages.

28. Ms. Lawrence and her male Senior Regional Director colleagues performed a common core of primary duties including, but not limited to, managing and coordinating outreach and fundraising efforts, overseeing educational programs conducted by Defendant or in partnership with external organizations, assisting Defendant's legal team with litigation related to environmental matters, and managing the staff in their assigned region.

29. Defendant knew Ms. Lawrence was performing the same duties as its male Senior Regional Directors and admitted to Ms. Lawrence that her original job title was incorrect and should be corrected. However, Defendant took no action to correct Ms. Lawrence's job title or pay for over two (2) years.

30. In addition to performing the same or substantially similar duties as Defendant's Senior Regional Directors, Ms. Lawrence also performed additional leadership roles including, but not limited to, leading multiple strategic teams and performing work on justice and equity initiatives within Defendant's organization for which she was not compensated.

31. Though she was paid less than her male counterparts, Ms. Lawrence's position as the Southeast Regional Program Director required the same or substantially similar time, effort, and responsibility as the positions held by Smuts and Miller. By way of example, neither Smuts nor Mr. Miller were responsible for leading multiple strategic teams and performing work on justice and equity initiatives.

32. Ms. Lawrence, Smuts, and Miller all performed their work under the same or substantially similar working conditions. All three worked remotely from their homes and were required to travel frequently to perform essential functions of their positions.

33. Because Defendant knew or should have known it was compensating Ms. Lawrence at an annual salary lower than male coworkers who performed the same or substantially similar work, Defendant knowingly failed to pay Ms. Lawrence equal wages for the same or substantially similar work she performed under similar working conditions and, by Defendant's affirmative refusal to pay Ms. Lawrence the back wages she was owed, Defendant willfully and intentionally violated the EPA.

34. Defendant intentionally concealed the fact that it was paying Ms. Lawrence substantially less than her male colleagues for the same or substantially similar work, by including but not limited to assigning her a different job title. As such, Defendants willfully and intentionally violated the EPA.

35. As a direct, proximate, and reasonably foreseeable result of Defendant's unlawful conduct and violations of the EPA, Ms. Lawrence is entitled to recover all back pay owed, liquidated damages, attorneys' fees and costs as well as any other damage or loss incurred by Ms. Lawrence in connection with this claim.

## JURY DEMAND

Plaintiff demands a trial by jury of the claim asserted in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays the Court:

1. For a judgment in her favor for all monetary damages and liquidated damages recoverable by Plaintiff against Defendant;

2. For a judgment in her favor, determining that Defendant's actions and conduct relating to Plaintiff's wages constitute a willful violation of the EPA;

3. For an award of reasonable attorneys' fees and costs incurred by Plaintiff in filing and prosecuting this action and as authorized by law;

4. For an award of pre- and post-judgment interest to Plaintiff on all damages up to the trial of this matter; and

5. For all other, further relief as this Court deems just and appropriate.

Respectfully submitted, this the 13th day of March, 2022.

**GREEN MISTRETTA LAW, PLLC**

/s/ Dawn T. Mistretta
Dawn T. Mistretta, N.C. State Bar No. 31691
1752 Heritage Center Drive, Suite 101
Wake Forest, North Carolina 27587
Telephone: (919) 278-7453
Facsimile: (855) 876-8893
dmistretta@gmlawyers.org
*Counsel for Plaintiff*